UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| SIX HOGS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| JOHN DOE D/B/A SAMSONICO INTERNATIONAL, INC.; SAMSONICO USA LLC | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Six Hogs, LLC (hereafter "Six Hogs") hereby states the following as its Complaint against defendants John Doe d/b/a Samsonico International, Inc. ("Samsonico International") and Samsonico USA LLC ("Samsonico USA") (collectively referred to at times as "Samsonico" or the "Samsonico Defendants").[1]

## THE PARTIES

1. Plaintiff Six Hogs is a Kentucky limited liability company having its principal place of business at 302 American Greeting Card Road, Corbin, Laurel County, Kentucky. The sole member of Six Hogs is a resident of Kentucky.

2. On information and belief, defendant John Doe d/b/a Samsonico International is a business organization, common-law partnership, or natural person doing business as "Samsonico International, Inc." and having a place of business at

---

[1] Plaintiff styles this complaint as being against "John Doe d/b/a Samsonico International, Inc." because it has been unable to identify a legal entity formed under the name, real or assumed, of "Samsonico International, Inc." On information and belief, Samsonico International, Inc., may be an informal fictitious name of defendant Samsonico USA. For this reason, Plaintiff refers to both defendants jointly as "Samsonico" at times in this complaint, pending discovery of the identity of defendant John Doe d/b/a Samsonico International, Inc.

1

4925 Westin Park Drive, Conway, Faulkner County, Arkansas.

3. On information and belief, defendant Samsonico USA is an Arkansas limited liability company having a principal place of business at 4925 Westin Park Drive, Conway, Faulkner County, Arkansas.

## JURISDICTION AND VENUE

4. This Court has original and supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5. Personal jurisdiction over the Samsonico Defendants is proper in this District pursuant to Ky. Rev. Stat. § 454(2)(a) because, on information and belief, the Samsonico Defendants have transacted business in this District, have contracted to supply services or goods in this District, have caused tortious injury by an act or omission in this District, or have caused tortious injury in this District by an act or omission outside this District arising out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the District; and because the Samsonico Defendants have availed themselves of the rights and benefits of the laws of the Commonwealth of Kentucky.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Samsonico Defendants are subject to personal jurisdiction in this District and have directed their patent enforcement and business activities at this District, and because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

7. Amazon.com, Inc., ("Amazon") is a multinational company that provides, among other things, ecommerce, order fulfillment, and shipping services to third parties selling various products on Amazon's ecommerce platform located at

Amazon.com. On information and belief, Amazon's ecommerce platform is the largest in country, if not the world.

8. Among its many policies applicable to sellers and buyers on its ecommerce platform, Amazon provides mechanisms by which intellectual property owners may allege infringement of their intellectual property rights by sellers on Amazon's platform.

9. A person alleging infringement generally must declare the following under penalty of perjury with respect to its infringement allegations:

> I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law.
>
> I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above.

*See* https://www.amazon.com/report/infringement (last visited Dec. 12, 2019).

10. Upon receipt of an allegation that a seller is infringing the intellectual property rights of another, Amazon historically has so notified the allegedly infringing seller and indefinitely suspended further sales of the allegedly infringing product.

11. It is well-known among sellers that Amazon does not try to confirm whether an infringement allegation is correct or made in good faith.

12. Likewise, it is well-known that infringement allegations put Amazon sellers in jeopardy of a complete suspension of sales, meaning that an accused seller may lose its ability to sell any and all products on Amazon.

13. If accused of infringement, a seller's only recourse (short of potentially expensive litigation) generally is to contact the party reporting infringement in an effort to negotiate a resolution in which the accusing party agrees to retract its

infringement allegation and allow sales of the accused product to resume.

14. Absent an agreed resolution between the parties or a court order adjudicating the dispute, Amazon generally will not resume sales of the accused product on its platform.

15. Because allegations of infringement are easy to make and provide strong leverage on Amazon's platform, false reports of infringement have become a common means by unscrupulous sellers to suppress competition from other Amazon sellers.[2]

16. Operating out of Corbin, Kentucky, plaintiff Six Hogs and other subsidiaries of Webbed Sphere, Inc., are leading online retailers of consumer goods, providing employment to more than 200 Kentuckians and contributing roughly forty million dollars in annual revenue to the local economy.

17. Six Hogs operates the "Clockwork Cornucopia" storefront on Amazon's ecommerce platform, from which it sells a wide variety of products under different brand names.

18. Six Hogs sells its products only on Amazon and through no other channels of distribution.

19. Six Hogs' commercial success relies on careful selection of products for which Six Hogs has determined there will be significant consumer demand, along with leveraging Amazon's fulfillment logistics.

20. In 2018 Six Hogs began to sell new, high-quality plush toy snowballs on Amazon under its Attatoy brand name (the "Attatoy snowball").

21. Sales of the Attatoy snowballs were brisk from the outset due to product

---

[2] See, e.g., False Infringement Claims are Rife on Amazon, located at https://www.webretailer.com/b/false-infringement-claims-amazon/ (last visited January 3, 2020).

quality, consumer demand, and fulfillment enabled by the contractual and business relationships between Six Hogs and Amazon.

22. On June 12, 2019, however, Six Hogs received the following email notification from Amazon that a third-party had reported the Attatoy snowball as infringing certain patent rights:

> We received a report from a rights owner that claims the items at the end of this email infringe their utility patent rights. We consider allegations of intellectual property infringement a serious matter. We have provided the rights owner's contact information below:
>
> -- Jessica Carpenter-Stephens
> -- jessica@samsonico.com.tw
> -- Patent number: 8,992,356
>
> Please work directly with the rights owner to resolve this dispute. We encourage you to resolve this dispute promptly. Failure to do so may result in removal of your offers or your Amazon.com selling privileges.
>
> ASIN: B07K7TM7JS
> Title: Attatoy 30-Count Indoor Plush Snowballs, Toy Snowballs for Indoor Play with Drawstring Bag

23. Later the same day, Six Hogs received a separate email from the jessica@samsonico.com.tw email address, stating:

> Attatoy; Clockwork Cornucopia:
>
> Samsonico International, Inc., the exclusive licensee of KM Innovations LLC's rights under U.S. Utility Patent No. 8,992,356 (the "Snowball Patent"), protecting a snowball product (the "Protected Product").
>
> It has come to our attention that you are selling unauthorized copies of the Protected Product on Amazon. ASIN B07K7TM7JS
>
> Amazon has been notified of your illegal activity and support our findings.

5

> I request that you immediately remove all listings for the Knockoff Product, or we will be forced to take immediate legal action.
>
> Your immediate cooperation and acknowledgement of this demand is required by 6/13/19.
>
> I can be reached at:
>
> > Jessica Stephens
> > Samsonico International, Inc.
> > 4925 Westin Park Dr.
> > Conway, AR 72034
> > jessica@samsonico.com.tw

24. Beginning June 12 and continuing through the present, Amazon suspended sales of the Attatoy snowballs on its platform, thereby removing Six Hogs' customers' ability to buy the Attatoy snowballs and resulting in significant loss of revenue by Six Hogs.

25. On information and belief, Amazon suspended sales of the Attatoy snowball as a direct result of the infringement allegation referenced in the two June 12 emails that the Attatoy snowball infringed U.S. Patent No. 8,992,356 (hereafter "the '356 Patent").

26. The United States Patent & Trademark Office's ("USPTO") online records reflect a document styled "NOTICE OF LICENSE OF PATENT AND TRADEMARK REGISTRATION," dated December 21, 2018, which names "Samsonico International, Inc." as exclusive licensee of the '356 Patent and states that "Samsonico International, Inc." was "grant[ed] the first right to enforce any and all rights under [the '356 Patent]."

27. On September 16, 2019, Six Hogs' legal counsel sent a letter by both email and certified mail delivery to Samsonico at the addresses provided in its earlier email.

28. In the letter, Six Hogs objected to Samsonico's infringement allegation

6

and demanded that Samsonico take steps to rescind its false infringement notice to Amazon, such that Amazon would resume sales of the Attatoy snowball.

29. Six Hogs also explained in detail why the Attatoy snowball did not infringe the '356 Patent and why, in any event, the '356 Patent appeared to be invalid and unenforceable.

30. On September 26, 2019, having received no response from Samsonico, Six Hogs learned from the U.S. Postal Service that Samsonico had not accepted or retrieved the certified mail delivery.

31. Six Hogs' counsel emailed Samsonico seeking confirmation that Samsonico had received the September 16 letter by email, stating:

> Absent confirmation, we will notify Amazon that Samsonico apparently either provided inaccurate contact information along with its infringement notification or that Samsonico is ignoring our efforts to communicate regarding the matter.

32. Shortly afterward on the same day, Six Hogs' counsel received an email from legal counsel for Samsonico, in which counsel stated that he would respond to the September 16 letter in the near future.

33. On October 14, 2019, Samsonico's counsel emailed a letter to Six Hogs' counsel stating that Samsonico would not retract its infringement allegation.

34. However, Samsonico's letter also reflected that it had not actually compared the Attatoy snowball to the claims of the '356 Patent before submitting its claim of infringement to Amazon:

> Your client's product offered on Amazon as the Attatoy 30-Count Indoor Plush Snowballs appears virtually identical to the patented snowballs, which are formed from fiber strand/beads formed by forcing fiber material through a spinneret. However, I am intrigued by your assertion that your inspection of the accused product shows no fastening fiber at a central core. Please forward for review a

7

sample of your client's product (in original packaging) that lacks the claim limitations identified in your letter, if you want this firm to continue its investigation and/or reconsider our previous determinations.

35. In light of the foregoing, and on information and belief, Samsonico did not conduct an actual inspection of the Attatoy snowball or compare such product to the claims in the '356 Patent prior to sending Amazon its June 12 allegation that the Attatoy snowballs infringed the '356 Patent.

36. On information and belief, Samsonico sent its infringement allegation to Amazon in bad faith and/or with reckless disregard of the truth or falsity of the allegation.

37. On information and belief, Samsonico was aware at the time that its infringement allegation and the resulting suspension of Attatoy snowball sales on Amazon's platform would result in would-be purchasers of the Attatoy snowball product instead purchasing Samsonico's competing snowball product.

## COUNT ONE
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE BUSINESS RELATIONS

38. The foregoing paragraphs of this Complaint are incorporated herein by reference.

39. At all relevant times, a contractual and business relationship has existed between Six Hogs and Amazon in which Amazon provides warehouse, ecommerce, and fulfillment services to Six Hogs in which Six Hogs' products are offered for sale on and through Amazon's platform.

40. On information and belief, the Samsonico Defendants knew of the contractual and business relationship between Six Hogs and Amazon.

8

41. On or about June 12, 2019, Samsonico contacted Amazon and falsely alleged in bad faith to Amazon that the Attatoy snowball infringed the '356 Patent, with the intention that Amazon cease further sales of the Attatoy snowball on Amazon's platform.

42. By falsely alleging in bad faith to Amazon that the Attatoy snowball infringed the '356 Patent, Samsonico did in fact cause Amazon to cease sales of the Attatoy snowball on its platform.

43. On information and belief, Samsonico's motive in contacting Amazon and making false, bad-faith allegations to Amazon was to remove the Attatoy snowball from the market so that the Samsonico Defendants' competing toy snowball product could capture greater market share.

44. Because Amazon no longer is able to sell the Attatoy snowball on Amazon, Six Hogs has suffered significant damages.

45. Samsonico had no privilege or justification to excuse its false allegations to Amazon that the Attatoy snowball infringes the '356 Patent.

46. As a result of Samsonico's actions, Six Hogs is entitled to an award of compensatory damages in an amount to be determined by the Court and an award of punitive damages against the Samsonico Defendants.

## COUNT TWO
## BUSINESS DEFAMATION / TRADE LIBEL

47. The foregoing paragraphs of this Complaint are incorporated herein by reference.

48. On or about June 12, 2019, on information and belief, Samsonico defamed Six Hogs by falsely communicating to Amazon that the Attatoy snowball infringed the

9

'356 Patent.

49. On information and belief, the Samsonico Defendants' defamatory communication was a bad-faith effort to cause Amazon to remove the Attatoy snowball from Amazon's marketplace so that the Samsonico Defendants' competing toy snowball product could capture greater market share.

50. By falsely communicating in bad faith to Amazon that the Attatoy snowball infringes the '356 Patent, the Samsonico Defendants deterred Amazon from further dealing with Six Hogs in the sale of the Attatoy snowball, thereby prejudicing Six Hogs in the conduct of its business.

51. Because Amazon indefinitely suspended sales of the Attatoy snowball in its marketplace, Six Hogs has suffered significant damages.

52. As a result of the Samsonico Defendants' actions, Six Hogs is entitled to an award of compensatory damages in an amount to be determined by the Court and an award of punitive damages against the Samsonico Defendants.

## COUNT THREE
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

53. The foregoing paragraphs of this Complaint are incorporated herein by reference.

54. The Attatoy snowball does not infringe any valid claim of the '356 Patent. For example, the Attatoy snowball lacks elements corresponding to the following limitations in the single independent claim of the '356 Patent:

| Element/limitation of Claim 1 of U.S. Pat. No. 8,992,356 | Accused product, "Attatoy Snowball" |
|---|---|
| A fiber ball, comprising: a fiber bundle strand having a predetermined length bound together with a fastening fiber at a central core, | Lacks the feature of "a fiber bundle strand having a predetermined length bound together with a fastening fiber at a central core." |

| | |
|---|---|
| wherein said fiber bundle strand comprises a plurality of individual fiber beads formed by forcing fiber material through a spinneret, | May lack the feature of "individual fiber beads formed by forcing fiber material through a spinneret" |
| wherein said plurality of individual fiber beads extend outwardly and away from said fastening fiber at said central core to form a generally spherical shaped ball. | Lacks the feature of "individual fiber beads extend[ing] outwardly and away from [a] fastening fiber at [a] central core." |

55. Because the Attatoy snowball lacks elements of the only independent claim of the '356 Patent, the Attatoy snowball necessarily does not infringe any of dependent Claims 2 through 7.

56. As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

57. A judicial declaration is necessary and appropriate so that Six Hogs may ascertain its rights regarding the Attatoy snowball and the '356 Patent and inform Amazon accordingly.

58. Six Hogs is entitled to a declaratory judgment that Six Hogs has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claims of the '356 Patent pursuant to 35 U.S.C. § 271.

## COUNT FOUR
## DECLARATORY JUDGMENT OF INVALIDITY

59. The foregoing paragraphs of this Complaint are incorporated herein by reference.

60. One or more claims of the '356 Patent are not novel and/or are obvious in light of prior art.

61. For example, Claims 1 and 2 of the '356 Patent provide:

> **Claim 1.** A fiber ball, comprising: a fiber bundle strand having a predetermined length bound together with a fastening fiber at a central core, wherein said fiber bundle strand comprises a plurality of individual fiber beads formed by forcing fiber material through a spinneret, wherein said plurality of individual fiber beads extend outwardly and away from said fastening fiber at said central core to form a generally spherical shaped ball.
> **Claim 2.** The fiber ball of claim 1, wherein said predetermined length is about 3 inches.

62. China patent publication CN2075100U, published April 17, 1991, discloses a fiber ball comprising a fiber bundle strand having a predetermined length bound together with a fastening fiber at a central core, wherein said fiber bundle strand comprises a plurality of individual fiber beads, wherein said plurality of individual fiber beads extend outwardly and away from said fastening fiber at said central core to form a generally spherical shaped ball.

63. China patent publication CN2574762Y, published September 24, 2003, discloses a fiber ball comprising a fiber bundle strand having a predetermined length bound together with a fastening fiber at a central core, wherein said fiber bundle strand comprises a plurality of individual fiber beads, wherein said plurality of individual fiber beads extend outwardly and away from said fastening fiber at said central core to form a generally spherical shaped ball.

64. Japan patent publication JP1995042060A, published February, 10 1995, discloses a fiber ball comprising a fiber bundle strand having a predetermined length, wherein said fiber bundle strand comprises a plurality of individual fiber beads formed by the action of a nozzle, wherein said plurality of individual fiber beads form a generally spherical shaped ball.

65. European patent publication EP0811710A1, published December 10,

12

1997, discloses a fiber structure having excellent recovery from compression and compression durability, formed by forcing fiber material through a spinneret, to form a generally spherical shaped ball.

66. While not exhaustive, the foregoing patent publications evidence that the claims of the '356 Patent are not novel and/or are obvious under 35 U.S.C. §102 and/or §103.

67. One or more claims of the '356 Patent likewise are invalid for failure to meet the written description, enablement, and/or definiteness requirements of 35 U.S.C. §112.

68. For example, Claims 3 through 7 of the '356 Patent provide as follows:

> **Claim 3.** The fiber ball of claim 1, wherein said fiber ball feels like a snowball.
>
> **Claim 4.** The fiber ball of claim 1, wherein said fiber ball emits a sound like a snowball when compressed.
>
> **Claim 5.** The fiber ball of claim 1, wherein said fiber ball has characteristics of a soft and scrunchy ball.
>
> **Claim 6.** The fiber ball of claim 1, wherein said fiber ball is operable to compress and deform upon impact thereby dispersing energy upon impact.
>
> **Claim 7.** The fiber ball of claim 6, wherein said fiber ball is designed to recover its original form after impact.

69. As evidenced in the claims quoted in the foregoing paragraph and in the examples in the following paragraphs, the claims of the '356 Patent are invalid under 35 U.S.C. §112 because the patent's specification does not show possession of the claimed invention and does not teach how to make the claimed invention, and because the claims lack sufficient definiteness to give proper notice of the scope of the claimed subject matter.

70. For example, a "fiber ball" is claimed in each of Claims 1 through 7 of the '356 Patent. Column 1, line 45 of the specification of the '356 Patent admits of a synthetic or non-synthetic fiber ball, yet the specification appears to be directed solely to a synthetic fiber ball. As such, the breadth of the claim (fiber ball) is not commensurate with the narrower scope of the disclosure (synthetic fiber ball),

71. No example of a synthetic fiber is provided in the specification of the '356 Patent.

72. No example of a material from which to make a fiber bead is provided in the specification of the '356 Patent.

73. Recitation of an undisclosed "unique manufacturing process" of column 2, lines 9-11, of the '356 Patent is an admission that such a manufacturing process is not known in the art.

74. No example of a fiber bundling machine or of its operating parameters or conditions is provided in the specification of the '356 Patent.

75. The fastening fiber **12** recited in the specification of the '356 Patent is described in that specification as being placed at predetermined points along the fiber bundle strand **22** recited in the specification of the '356 Patent, but it is not disclosed in the specification of the '356 Patent how those "predetermined" points are to be determined by a person of ordinary skill in the art.

76. No example of a bundle cutting machine or of its operating parameters or conditions is provided in the specification of the '356 Patent, other than that the distance from the fastening fiber **12** to both cut ends **26** recited in the specification of the '356 Patent must be equal.

77. No example of a spinning oven is provided in the specification of the '356

14

Patent.

78. No objective measure of hardness is provided in the specification of the '356 Patent.

79. As a result of the acts and/or omissions described in the foregoing paragraphs of this Complaint, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of invalidity.

80. A judicial declaration is necessary and appropriate so that Six Hogs may ascertain its rights regarding the validity, or the lack thereof, of the '356 Patent and inform Amazon accordingly.

81. Six Hogs is entitled to a declaratory judgment that the claims of the '356 Patent are invalid pursuant to one or more provisions of 35 U.S.C. §§ 102, 103, and/or 112.

## COUNT FIVE
## DECLARATORY JUDGMENT OF UNENFORCEABILITY

82. The foregoing paragraphs of this Complaint are incorporated herein by reference.

83. As a result of the acts described in the foregoing paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of unenforceability.

84. A judicial declaration is necessary and appropriate so that Six Hogs may ascertain its rights regarding the enforceability, or the lack thereof, of the '356 Patent and inform Amazon accordingly.

85. Six Hogs is entitled to a declaratory judgment that the '356 Patent is unenforceable due to inequitable conduct before the United States Patent and

Trademark Office ("USPTO") and patent misuse, as further described below.

86. On information and belief, the '356 Patent was obtained from the USPTO without the disclosure to the USPTO of information material to patentability as required by 37 C.F.R. § 1.56, including for example material information as described in 37 C.F.R. § 1.98 that could have been disclosed by means of the filing of an Information Disclosure Statement pursuant to 37 C.F.R. § 1.97.

87. On information and belief, the '356 Patent was obtained from the USPTO based on a statement that an assignment of rights in the patent application giving rise to the '356 Patent (U.S. Patent Application Serial No. 13/909,580) had been filed for recordation as set forth in 37 C.F.R. § 3.11, when in fact no such recordation had been filed.

88. The '356 Patent was misused by Samsonico in order to exclude the Attatoy snowball from its only channel of distribution, Amazon, where Samsonico sold and continues to sell a competing toy snowball product, thus improperly exercising market power by purporting to exercise legal rights not in fact granted by the '356 Patent, effectively eliminating competition and depriving consumers of choice.

89. The improper exercise of market power described in the foregoing paragraph was undertaken by the Samsonico Defendants with knowledge that the '356 Patent did not in fact grant them the right to exclude the Attatoy snowball from the market or, in the alternative, without due care and without proper investigation as to whether the Attatoy snowball did in fact infringe any valid and enforceable claim of the '356 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court adjudge and decree the following relief:

1. Judgment in Plaintiff's favor against Defendants, jointly and severally, on all applicable counts and an award of compensatory and punitive damages, together with all costs Plaintiff incurs in the litigation of this action;

2. Declaratory judgment pursuant to 28 U.S. Code §§ 2201-02 that Plaintiff has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '356 Patent, in violation of 35 U.S.C. § 271;

3. Declaratory judgment pursuant to 28 U.S. Code §§ 2201-02 that each of the claims of the '356 Patent is invalid;

4. Declaratory judgment pursuant to 28 U.S. Code §§ 2201-02 that the '356 Patent is unenforceable;

5. Judgment that Defendants and each of their officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Plaintiff infringes any claims of the '356 Patent or from instituting or initiating any action or proceeding alleging infringement of any claims of the '356 Patent against Plaintiff or any customers, manufacturers, users, importers, or sellers of Plaintiff's products;

6. Declaring Plaintiff as the prevailing party and this case as exceptional, and awarding Plaintiff its reasonable attorney's fees, pursuant to 35 U.S.C. § 285;

7. Pre-judgment and post-judgment interest on all damages awarded to Plaintiff at the highest rate of interest allowed by law;

8. An award of Plaintiff's attorney's fees and costs; and

9. Any and all such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ William L. Montague, Jr.            .
William L. Montague, Jr.
G. David McClure, Jr.
MONTAGUE LAW PLLC
110 West Vine Street, Suite 300
Lexington, Kentucky 40507
(859) 423-1100 (telephone)
(888) 398-4958 (facsimile)
will.montague@wmlex.com
david.mcclure@wmlex.com

*Counsel for Plaintiff*